COOPER
vs
GUNN, &c.

---

CHANCERY.

*Case* 110.

# Cooper *vs* Gunn, &c.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Parties.    Copy-rights.*

June 14.

The case stated.

JUDGE MARSHALL delivered the opinion of the Court.

THIS bill was filed by Cooper, claiming to be the equi-
table owner of a judgment in favor of Hiram Malone
& Brothers, against John C. Gunn, for the purpose of
attaching and subjecting to the payment of that judgment
a judgment in the name of Jordan P. Beeler vs Bell,
Dollis & Swearingen, alledged to have been obtained and
held by Beeler, as nominal trustee of Clarissa Gunn and
her children, the wife and children of said John C. Gunn,
but in fact for the sole use and benefit of John C. Gunn,

to whom alone the proceeds, with all benefit and advantage thereof, would accrue. The bill alledges in substance that Gunn, being the author of a book called "Gunn's Domestic Medicine, &c." for which he had obtained a copy-right, fraudulently assigned one half thereof to G. C. Raymond, in trust for Raymond's wife, and that a copy-right having also been obtained for the first revised edition of said book, which was to be greatly enlarged, he afterwards fraudulently assigned the whole interest to Raymond, in trust, as to one half for Raymond's wife, and as to the other, for the wife and children of Gunn; that under a power reserved in the deed, Beeler was afterwards made the trustee for Mrs. Gunn and her children; and that the note on which the judgment attached was obtained, was executed for a part of the price of the interest in the copy-right thus held by Beeler, ostensibly, in trust for Mrs. Gunn; and it is averred that all of these assignments were fraudulently made, for the purpose of securing the proceeds of the copy-right to the use of Gunn, and that the judgment in question was in fact held for his use, as above stated.

The complainant makes title to the judgment sought to be enforced, through an alledged assignment thereof, by the plaintiffs, to Trabue, Jarvis & Curd, in trust for certain creditors named in the deed, and by the alledged assignment of Trabue, Jarvis & Curd to himself. But the evidences of these assignments are imperfect, and neither the plaintiffs nor their assignees are made parties. The subpœna was executed upon all the parties to the bill except Raymond and Swearingen, and upon the demurrers of Mrs. Gunn and Beeler, her trustee, without answer or demurrer by any other parties, the bill was dismissed absolutely.

As the allegations of the bill make out an equity in the judgment sought to be enforced, and the defect of title appears in the evidences of the alledged assignments, filed as exhibits, the bill should not have been dismissed absolutely, but the complainant should have been allowed an opportunity of making and bringing the proper parties before the Court, under pain of having his bill dismissed without prejudice, unless upon the face of the

---

COOPER
*vs*
GUNN, &c.

On bill filed by a creditor to subject to the satisfaction of a judgment assigned to the complainant, the original pl'tf in the judgment and a trustee to whom the same was assigned and who assigned to complainant, are necessary parties.

COOPER
*vs*
GUNN, &c.

bill there is no equity made out for subjecting the judg. ment of Beeler against Bell, Dollis, and Swearingen, to the satisfaction of the judgment of H. Malone & Brothers, against John C. Gunn; and as an execution on this judgment has been returned, in substance, 'no property found,' this question of equity resolves itself into the question whether, upon the allegations of the bill, Gunn has such an interest in the other judgment as, under the circumstances appearing, can be made liable for his debts, by attachment in chancery, under our statute.

As the bill, in addition to the allegation of fraud, alledges that the judgment in the name of Beeler is really held for the sole use of Gunn, this fact being admitted, would, in an ordinary case, be decisive of its liability to attachment for his debts. But it is contended that as the bill further shows, in making out Gunn's interest, that the judgment is for a part of the price of his copy-right, it is thus shown that the property or interest sought to be attached is one of a peculiar character, and which, under the protection extended to it by the Constitution of the United States and the Acts of Congress, in relation to copy-rights, is either altogether exempt from such a proceeding or can only be subject to it under circumstances not appearing in this case.

But although an author who has obtained a copy-right for his book, according to the acts of Congress on the subject, cannot, as we suppose, be deprived, against his will, and in favor of any of his creditors, of any of the rights secured to him by said acts, we are of opinion that this protection does not extend, and was not intended to extend to the proceeds of the sale of the copy-right, whether existing in his own hands, in the shape of visible property or choses in action, or held by another for his use. The creditors of an author cannot compel him to write or to publish a book for which he has obtained a copy-right, or to give up the manuscript, nor can they compel him to sell his right of printing and publishing or of selling his books. And possibly they cannot, against his will, seize and sell the books themselves, the exclusive right of vending which is, in terms, vested in him by the act of Congress. But when, by voluntary

Altho' the grantee of a copyright for a book cannot be deprived by his creditors of any right secured to him by the Constitution and acts of Congress, yet the protection does not extend to the exemption of visible property received for the sale of such copy-right and existing in his own hands, or choses in action existing in the hands of another for his use, though such be the proceeds of a sale of the copyright, if the man-

sale, he has converted this privileged property into prop-
erty of a different sort, we do not perceive that the secu-
rity of the privilege intended to be conferred on authors
requires that this other property should also be privileged,
in consequence of the manner in which it has been ac-
quired.   If it were so, then the same principle would ex-
tend the privilege to all of his property which could be
traced, no matter through how many conversions, up to
the original privileged source; and his speculations, as
well as his writings, might be made to partake of the
privilege.

COOPER
*vs*
GUNN, &c.

uscript has been
delivered over to
the purchaser of
the copy-right,
and *nothing fur-*
ther is to be done
by the grantee of
the copy-right to
give the work to
the public.

If then an author, having secured a copy-right of a
book, sells the copy-right, and also the matter to be
printed, and actually delivers the matter to the vendee,
or it exists in such a condition that the vendee has a right
to take and can take possession of it at his will for the
purpose of printing the book, and if the consideration of
the sale be property delivered or to be delivered to the au.
thor or to another for his use, or be money secured to be
paid to the author or to another for his use, we are of
opinion that such property or choses in -action may be
subjected to the debts of the author, without regard to its
origin, as any other similar property or right in action
might lie.

It is deemed immaterial that the copy-right and the
manuscript might, unlike other property, have been given
away, if the author had chosen to give them, or that the
price of the transfer or the right of receiving it has been
vested by one or more deeds of trust in a trustee, for the
ostensible use of another, if these transfers were in fact
made for the purpose of securing the avails of the copy-
right to the indebted author, and to make them inaccessi-
ble to his creditors.   And if the trustee, holding them
nominally for another, holds them in fact for the use of
the author, they may, under our laws, and as we think,
without contravening the policy of the law of copy-right,
be subjected to the payment of his debts.

But if, upon such sale of the copy-right, the matter or
manuscript which is to constitute the book be not in ex-
istence or be not accessible to the purchaser, as the law
has no means of compelling the author to compose or in-

And if the pro-
ceeds to be re-
ceived for the
sale *of a copy-*
right be fraudu-
lently conveyed

Cooper
*vs*
Gunn, &c.

to another, to be
held in trust for
the benefit of the
grantee of such
right, the Chan-
cellor may sub-
ject them to his
debts.

vent matter to be published, and as the fact of taking from him the promised remuneration might have a direct tendency to prevent him from furnishing the matter of the book, and would so far defeat the object of the act establishing the copy-right and of the constitutional provisions which authorizes their enactment, we are of opinion that the subjection of a debt due from the vendee upon a sale of the copy-right, made under these circumstances, would be contrary to the public policy established by the laws upon the subject and, therefore, improper.

Where the man-
uscript of a book
is not delivered
to the vendee of
the copy-right by
the person to
whom it is grant-
ed, or be not in
existence, the
Chancellor can-
not subject the
consideration
due to the gran-
tee to the pay-
ment of his
debts.

It does not appear, however, on the face of the bill, that the present condition of the contract or transaction on which this judgment against Bell, Dollis, and Swearingen is founded, is such that the printing, publishing, or vending of the book by them, will be in the slightest degree interrupted or endangered by diverting this portion of the price which they were to give for the copy-right, from Gunn's private and personal use to the satisfaction of his debts; in other words, it does not appear that anything remains to be done by Gunn, for securing to Bell, Dollis, and Swearingen, the full benefit of their purchase, or for securing to the public the full benefit of a free circulation of the entire book. And although it is not explicitly stated in the bill that every thing has been done by Gunn which was necessary to secure these objects, yet as from the facts appearing—from the dates of the several transfers; the apparently unconditional purchase by Bell, Dollis, and Swearingen, for a large sum; their suffering a judgment to go against them; their replevying it, probably after this bill was filed, and their failure thus far to resist the relief sought by the complainant, or to make any objection to the payment of the judgment, the inference in the present attitude of the case is, that their interest in the copy-right, and, therefore, that of the public could not be affected by the proposed appropriation of the judgment. And as, upon the allegations of the bill, the demurrer of Mrs. Gunn and her trustee must be regarded as being virtually an objection on the part of Gunn himself, we think no presumption should be indulged by which, in opposition to the fair inference arising from the facts appearing, this fund should be withdrawn from

the reach of Gunn's creditors, and from the power of the Chancellor. Upon the face of the bill the judgment belongs to Gunn, and it would be little more than conjecture, against reasonable inference, to say that the consideration of it, so far as it depends on him, is in any degree executory.

We are of opinion, therefore, that notwithstanding the want of an explicit statement on this point, the bill should be considered as making out a *prima facie* case at least, as against Gunn and those who represent his interest in the subject. And as to the other parties, it cannot be assumed, as long as they fail to answer, that their interest is in any manner involved in the question whether they shall pay to the complainant or to another.

The decree, dismissing the bill absolutely, is, therefore, reversed and the cause remanded with directions to dismiss the bill, without prejudice, unless the complainant shall, in reasonable time, bring the proper parties before the Court.

*Fry & Page and Ballard* far appellant: *Duncan, B. & A. Monroe and Wheatley* for appellees.

Where a demurrer is sustained to a bill, containing equity *prima facie,* for want of parties, the dismission should be without prejudice, unless the complainant, in reasonable time, bring the proper parties before the Court.